344

CHARLES R. VOLZ and GEORGE S. VOLZ, d/b/a

VOLZ CONSTRUCTION COMPANY

*v.*

HANNAH SOUTHERLAND

(*Jackson*, April Term, 1956)

Opinion filed June 8, 1956.

Rehearing Denied July 20, 1956.

JOE H. WALKER, JR., Ripley, M. WATKINS EWELL, Dyersburg, for plaintiffs in error.

GEORGE SHUFF and JOHN W. SANFORD, Ripley, for defendant in error.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This is a Workmen's Compensation case in which the Circuit Judge rendered judgment in favor of Hannah Southerland, the petitioner as the surviving dependant of her son Albert S. Southerland, who died as a result of an accident occurring on December 13, 1951, while he was in the employ of the plaintiff in error.

The six assignments of error raise only two questions, one, that the accident did not arise out of and in the course of employment and was therefore not a compensable accident, and two, that the petitioner was not a compensable, partial dependant.

On the occasion of this accident the construction company was engaged in this particular location in the digging of a trench or ditch in which pipe was to be laid. A ditching machine was used for that purpose. The machine would cut to the approximate depth and would be immediately followed up by the deceased workman and others with shovels, whose duty it was to level the bottom of the ditch to conform to a specific depth as indicated by measurements placed at intervals inside the ditch as indicated by what was called batter boards. The object of this leveling of the bottom was to provide a surface on which the pipe would rest at the correct grade.

The deceased and his co-workers went to work at 7:00 o'clock on this morning. The weather was quite cold and before going into the trench the men had warmed themselves around a central fire located away from the ditch. The deceased, before entering the trench, had obtained one of the 2½ gallon concrete buckets on the premises and placed therein some cotton waste saturated with diesel oil which he took into the trench with him and lighted for the purpose particularly of keeping his hands warm down in the trench where there seems to have been some ice. After he and the others had been in the ditch about 35 minutes it was noticed that this bucket was sitting too close to one of the batter boards and that it might catch the same on fire. Deceased then took his shovel and undertook to put the shovel through the handle of the bucket and move the same, but in doing so the bucket was overturned and some of the burning oil splattered onto his clothing and as a result of these burns he later died.

It is the insistence of the construction company that the deceased had no right to use the concrete bucket for

that purpose, no right to use the cotton waste and diesel oil for that purpose, no right to take the same into the trench with him and that the accident of the bucket turning over and igniting his clothing was such as could not reasonably have been foreseen by the employer. That his act was wholly unauthorized and not foreseeable and was for his own private purpose and therefore is not compensable.

■ The record however presents simply a case of conflicting evidence where the trial judge believed the witnesses, who testified in behalf of the petitioner. All counsel in the case are familiar with the rule that if there is material evidence to support the finding of the trial judge, this Court has no power to disturb his findings.

A fellow worker, Elmore Richmond, testified that he was on the job that day and working in the trench right behind the deceased. That it was customary for the men to have a fire on cold mornings and that nobody had said anything about their having a fire at anytime. That the deceased had used this bucket on the day before the accident and on other previous occasions and that nobody had objected to it or cautioned him against it, although the foreman had seen the deceased and other workers use these buckets in that manner.

It is insisted by the plaintiffs in error that this witness was impeached and that his testimony contradicted itself so that he cannot be believed. This arises out of the fact that two years after the accident this witness signed a statement which among other things included the following statement:

"We had built the fires in buckets with fuel oil before but they were not furnished for that purpose. It was a quick way to build a fire and warm, we could

smother it out and move on without the foreman or anyone knowing about it. The foreman had not consented for us to do this.''

■ This witness testified that he did not say anything about smothering out the fire, meaning of course to hide it from the foreman, but that the rest of the statement was all right. With this eliminated we do not think that this statement is necessarily inconsistent with his testimony at the trial and we think this was a matter going to his credibility which was determined by the trial judge.

It is significant also that Mr. Charles R. Volz, a member of the firm, testified that he knew of the custom of workmen to build a fire adjacent to the ditch, although not in the ditch, and he admits that he would have had no objection to their using diesel fuel for the purpose of starting a wood fire, but that it was not agreeable to him for them to use the diesel oil as the fuel for the fire. It will be noted also at the bottom of page 83 of the record that when the foreman Mr. Bishop was asked: ''Did you have any knowledge of Albert Southerland, this man, getting diesel oil for the fire in the bucket'', he answered ''I was about 200 feet anyway up the line on that day, on my offset for the line, when I heard the racket the boys down in the ditch were trying to bring him out.'' Thus this witness' answer was not responsive at all to the question.

■ ■ It must therefore be concluded that there was material evidence to support the finding of the trial judge on the first question. There is also ample material evidence on the second question to show that the petitioner was a partial dependant of her son.

█ The record shows also that these men were supplied with rubber gloves on account of the mud and moisture down in the bottom of the trench, and that despite this their hands would get cold in handling these shovels under these conditions; it is a matter of common observation by anyone who has been around construction work that on cold mornings many of the workers will build a fire or fires for the purpose of actually warming themselves, or perhaps for the psychological effect at least of thinking that they are warming themselves, in order that they may proceed with the work of their employer, although the building of fires around almost any kind of construction work is more or less hazardous to the individual workman, and to the construction work itself in many instances according to the condition of the winds.

We think it is only fair to hold that this accident arose out of and in the course of this man's employment and for the reasons above stated we affirm the judgment of the trial court.

### On Petition to Rehear

The petition to rehear embraces three points: (1) That the original opinion failed to show why the two cases cited by plaintiff in error are not controlling, which cases are: *Shuck v. Carney*, 22 Tenn. App. 125, 118 S.W.2d 896, and *Kelly v. Louisiana Oil Refining Co.*, 167 Tenn. 101, 66 S.W.2d 997. (2) That the question whether or not the accident arose out of and within the course of the employment, is a question of law and not a question of fact. (3) That it is certainly unknown and unheard of for the employee to put a shovel through the handle of a bucket with burning diesel oil in it and to move the bucket across the ditch.

■ In response to (1) above, it seems sufficient to say that those two cases are tort cases where the question involved was the responsibility of the employer for the unauthorized and unforeseeable negligent act of the servant resulting in injury to a third party. But unforeseeableness and proximate cause as used in the law of negligence, are not tests in Workmen's Compensation cases. The rule is reiterated in *Davis v. Wabash Screen Door Co.*, 1947, 185 Tenn. 169, 204 S.W.2d 87, wherein it is said in substance, that if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and have flowed from that source as a rational consequence.

■■ Then in *Tapp v. Tapp,* 192 Tenn. 1, 236 S.W.2d 997, it is said that the burden rests upon the employee to show a causal connection between his injury and his employment, but that by causal connection is meant—not proximate cause as used in the law of negligence, but cause in the sense that the accident had its origin in the hazards to which the employment exposed the employee of doing the work. Again—in *Whaley v. Patent Button Co.*, 184 Tenn. 700, 202 S.W.2d 649, it is said that it is sufficient, if after the event there is apparent to the rational mind, a causal connection between the conditions under which the work is required to be performed and the resulting injury. The only way he can show these two things is by offering evidence tending to induce these two conclusions. If there be any conflict in the evidence

of the opposing sides, as there is here, or in the inferences to be drawn from same as here, or where the evidence is undisputed but the minds of reasonable men may draw different conclusions from same, it cannot be said that only a pure question of law is presented in a Workmen's Compensation case any more correctly than if the question were whether to direct a verdict in a jury case. Hence, there is no merit in the proposition (2) above.

Reference to the original opinion will readily disclose that the employee in this case has brought himself within the above requirements. He was at his post of duty doing the very work that he had contracted to do and the effort to keep his hands warm by means of the fire in the bucket down in the trench was brought about by the conditions of cold and dampness under which he was working and it would seem that keeping his hands reasonably warm would tend to further the work of his employer.

With reference to the third proposition—we refer first — to what was said under proposition No. 1 as to what is the proper test in Compensation cases, and secondly, it seems the most natural thing conceivable for this employee to have used his shovel for the purpose of removing a bucket filled with fire in order to prevent from burning the batter boards because, so far as the proof shows, the shovel was the only instrument he had in the ditch with him by means of which he could move the bucket.

The only other question raised in the petition was disposed of fully in the original opinion. We, therefore, overrule the petition to rehear.