BILLY MARION DAVIS, Plaintiff in Error,

*v.*

LIBERTY MUTUAL INSURANCE COMPANY,
Defendant in Error.

379 S.W.2d 777

(*Knoxville,* September Term, 1963.)

Opinion filed June 4, 1964.

Howell Clements, Chattanooga, Humphreys, Banks & Hutcheson, Chattanooga, of counsel, for plaintiff in error.

Paul R. Leitner, Chattanooga, Folts, Bishop, Thomas, Leitner & Mann, Chattanooga, of counsel, for defendant in error.

Mr. Justice Holmes delivered the opinion of the Court.

The parties will be referred to according to their status in the Trial Court. This is a Workmen's Compensation case in which there was a judgment for the defendant in the Trial Court. After his motion for a new trial was overruled, the petitioner has duly perfected his appeal and has assigned errors.

The petition for compensation alleges, that the petitioner was employed by Kel-San Products Co., Chattanooga, Tennessee, as a salesman selling janitors' supplies and floor materials, that the defendant is the insurance carrier of the Kel-San Products Co., under the Workmen's Compensation Act, that on November 16, 1962, at ap-

proximately 8:00 P.M., while the petitioner was on duty and acting in the course of his employment on the premises of a customer, he fell, breaking the bones in his left leg, causing him serious and permanent injuries. It is averred that this accident arose out of and in the course of his employment by his employer.

The defendant, in its answer, admits that the parties are operating under the Tennessee Workmen's Compensation Act and admits that the petitioner sustained an accidental injury at the time alleged. The answer denies that the petitioner was acting in the course of his employment and denies that the accident or injury arose out of petitioner's employment. It is further stated in the answer that at the time petitioner fractured his leg he was playing a game of basketball in the gymnasium on the premises of the Salvation Army in Chattanooga and that such activity upon his part was in no way connected with or related to the petitioner's employment by Kel-San Products Co., that the petitioner did go upon the premises of the Salvation Army on a mission for his employer "but after arriving in the gymnasium he found that he could not perform the mission for his employer which he had intended, so that he stored his equipment and agreed to play some basketball with some of the personnel of the Salvation Army."

On the trial, petitioner testified that he had sold the Salvation Army some of his employer's products and that on the evening of November 16, 1962 he went to the Salvation Army Hall for the purpose of showing them how to use the material he had sold so it would adhere to the floor. He had two floor machines with him and attached steel wool under the scrubbing brushes on these ma-

chines to show the men at the Salvation Army how to "edge the surface of the sealer, the old sealer that is on the floor''. The process that petitioner was attempting to demonstrate did not work and, after about twenty minutes of trying, petitioner determined he would have to use other equipment to edge the old sealer on the floor. He and the men at the Salvation Army then stored the equipment petitioner had brought with him in the office of the Athletic Director. Thereafter, one of the boys from the Salvation Army who had come to help with the floor edging operation suggested they play a game of basketball. Petitioner testified, "It was after I had decided in my own mind, and of course, they had decided too, that we could no longer do any more physical work on the floor that night", that the subject of playing basketball came up. Petitioner denied that he was playing basketball when injured. When asked "But, were you involved in basketball?", he answered, "No." He did state he intended to play basketball later. Again, when asked, "Were you playing basketball at the time of the injury?" he answered, "At the time of the injury I was not playing basketball." When asked, "What were you doing immediately before you fell?", the petitioner responded, "I was examining a corrugated area of the floor, a section that I was worried about due to moisture underneath the floor. It had corrugated just like your fingers, and I realized I was going to have to use a rough wire pad made by Minnesota Mining on there, and I was wondering just how good a job it was going to do, wondering if it would flip out from under the machine, or whether to do it by hand."

Witnesses for the defendant testified that the petitioner broke his leg while the basketball game was in active

progress. Captain Arrowwood of the Salvation Army testified he had arranged for members of the "Men's Club" of the Salvation Army to be there that evening so that they could be shown by petitioner how to prepare the floor, that the equipment which petitioner brought would not do the job and petitioner stated he would have to get other equipment which he did not have in stock, and the machines and equipment were put away and stored, that thereafter the two teams to play basketball were chosen and the basketball game was in progress at the time petitioner sustained his injury.

One of the basketball players testified that he was standing just a few feet from petitioner when one team was passing the ball from the west end of the basketball court toward the east end. A member of the defending team intercepted the ball as it was being passed and was advancing the ball toward the west goal; that, when this happened, the petitioner started running down the court toward the west goal when he stumbled on his own feet and fell. This witness testified petitioner took one or two steps before he tripped and injured himself.

Petitioner was taken to the hospital immediately following his injury. He admitted telling the doctor and the receiving nurse who took his history that he injured himself playing basketball.

The Trial Judge found that the injury was received while playing basketball, that there was no causal connection between the employment and engaging in the sport of playing basketball and that the injury did not arise out of and in the course of petitioner's employment.

The question presented by this appeal is whether or not there is material evidence in the record to support

this finding by the Trial Judge. In the Trial Court, as shown by petitioner's testimony, it was his contention that he was not engaged in playing basketball, but was examining the customer's floor when, in some manner, he fell and sustained his injury. In this Court it is contended by the petitioner that, even though he was engaged in playing basketball, he was so doing in furtherance of good customer relations and, therefore, was attempting to promote sales of his employer's product to the Salvation Army.

In *Scott v. Shinn*, 171 Tenn. 478, 105 S.W.2d 103, the following test as to when an injury by accident arises out of and in the course of employment was approved by the Court:

"It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The

causative danger must be peculiar to the work and not common to the neighborhood. * * * It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.'' 482 and 483 of 171 Tenn., 104 of 105 S.W.2d.

In *Volz v. Southerland,* 200 Tenn. 344, at 351 and 352, 292 S.W.2d 385, at 388, the Court stated:

''Then in *Tapp v. Tapp,* 192 Tenn. 1, 236 S.W.2d 977, it is said that the burden rests upon the employee to show a causal connection between his injury and his employment, but that by causal connection is meant—not proximate cause as used in the law of negligence, but cause in the sense that the accident had its origin in the hazards to which the employment exposed the employee of doing the work. Again—in *Whaley v. Patent Button Co.,* 184 Tenn. 700, 202 S.W.2d 649, it is said that it is sufficient, if after the event there is apparent to the rational mind, a causal connection between the conditions under which the work is required to be performed and the resulting injury. The only way he can show these two things is by offering evidence tending to induce these two conclusions. If there be any conflict in the evidence of the opposing sides, as there is here, or in the inferences to be drawn from same as here, or where the evidence is undisputed but the minds of reasonable men may draw different conclusions from same, it cannot be said that only a pure question of law is presented in a Workmen's Compensation case any more correctly than if the question were whether to direct a verdict in a jury case.''

The record in the case now before the Court shows material conflicts in the evidence relating to the activities of the petitioner at the time he sustained his injury. The only evidence in the record to connect in any way the playing of basketball with petitioner's employment is the testimony of the petitioner himself. His testimony is contradicted in material aspects by the testimony of other witnesses. The Trial Judge resolved the conflicts in testimony against the petitioner and found there was no causal connection between the petitioner's employment and his engaging in a basketball game.

The finding of the Trial Judge in a compensation case is the equivalent of a jury verdict approved by the Trial Judge. It is only when the evidentiary facts are undisputed and no conflicting inferences respecting the ultimate fact can be drawn therefrom that the question becomes one of law for this Court. If reasonable minds might differ as to the conclusions to be drawn from undisputed facts, the conclusions reached by the Trial Judge are binding on this Court. *Hartwell Motor Co. v. Hickerson*, 160 Tenn. 513, 26 S.W.2d 153; *Lynch v. La-Rue*, 198 Tenn. 101, 278 S.W.2d 85; *Volz v. Southerland*, supra; *Knoxville Scenic Studios, Inc. v. Hensley*, 202 Tenn. 548, 308 S.W.2d 368.

See also *Ward v. Commercial Insurance Company*, 213 Tenn. 100, 372 S.W.2d 292, in which the Court recently fully discussed the scope of review in Workmen's Compensation cases.

Had the issue of whether or not the petitioner's injury arose out of and in the course of his employment in the present case been triable before a jury, the evidence in this record would not make a proper case

for a directed verdict for the petitioner, but a case to be submitted to the trier of fact. The record contains substantial evidence to support the finding of the Trial Judge that there was no causal connection whatever between petitioner's employment and his injury. As stated in *Sandlin v. Gentry*, 201 Tenn. 509, 517, 300 S.W.2d 897, 900, we cannot overlook the finding of facts by the Trial Judge and reach a contrary conclusion under the guise of liberality of construction of the Compensation Act.

It results that the judgment of the Trial Court is affirmed at petitioner's cost.