Robert L. ANDERSON,
Plaintiff-Appellee,

v.

DEAN TRUCK LINE, INC., and
Excalibur Insurance Company,
Defendants-Appellants.

Supreme Court of Tennessee,
at Jackson.

Dec. 10, 1984.

Robert M. Burton, Memphis, for defendants-appellants.

Howard R. Paul, Memphis, for plaintiff-appellee.

OPINION

HIGHERS, Special Justice.

This worker's compensation case raises questions concerning the material evidence rule and the calculation of temporary total disability.

The plaintiff, Robert L. Anderson, a truck driver for Dean Truck Line, sought compensation for blindness in his right eye allegedly resulting from an injury occurring on May 24, 1979, while he was employed on defendant's premises. The plaintiff testified that on that date something blew into his eye. The foreman helped plaintiff in an attempt to rinse the eye, applied eye drops and bandaged the eye. Plaintiff stated that later, "it felt like something popped in the eye. Then the pains all started in it real bad." The plaintiff was sent to a hospital emergency room, sedated, and referred to Dr. Wood, an ophthalmologist, who had been treating the plaintiff since 1975 when a paint chip injured plaintiff's right eye. Apparently from this injury, herpes keratitis developed in the right eye. According to Dr. Wood's depositions, this disease weakened the eye making it more susceptible to injury.

When plaintiff was examined on May 24, 1979, Dr. Wood found that his right eye had been perforated. Dr. Wood stated that he could not say for certain whether the "something in the eye" caused the perforation, but he did state that "it would be difficult to deny that the foreign body must have played a role in the perforation of the eye." The eye "burst" again three days later after plaintiff had returned to work. Beginning in September 1979, the plaintiff underwent a series of eye operations. On September 3, 1979, he had a corneal transplant. On June 14, 1983, plaintiff had a tarsorrhaphy and a conjunctival flap on July 25, 1983. The plaintiff now wears a cosmetic plastic shell over his eye. Between May 1979 and February 1983, plaintiff had seen Dr. Wood nearly eighty times.

In his deposition, Dr. Wood stated that the first corneal transplant was made necessary by the perforation which occurred on May 24, 1979. Dr. Wood said that plaintiff had 20/200 vision qualifying him as legally blind for industrial purposes on his first visit in 1975. By 1979, his visual acuity deteriorated to 6/200 and this improved to 20/200. Currently, however, his vision is worse. As Dr. Wood put it, "if he can tell light from dark it would be lucky.... His eye now is non-functional visually." Plaintiff's vision was good enough with corrective lenses to pass the Department of Transportation test for truck drivers in 1977. Later, after the 1979 injury, he failed the exam twice.

In 1980, plaintiff continued working for Dean Truck Lines for about eight weeks. He stated that he could not do loading or dock work because of the pressure and strain put on the eye when lifting heavy loads. When the defendant told him not to come back until his eye problem was remedied, the plaintiff looked for work with several other trucking firms during 1981 and 1982. In 1983, he finally found employment for roughly six months.

■ The trial court found that the injury arising out of and in the course and scope of his employment on May 24, 1979, aggravated a pre-existing condition in plaintiff's right eye, leading to its 100% disability. The question is whether the loss of sight in the right eye was caused by the normal progress of the pre-existing disease or whether it was aggravated by the May 1979 injury. We believe there is material evidence to support the finding of the trial court. Dr. Wood testified that a perforation or other injury could make plaintiff's disease worse. He also stated that the accident probably played a role in the perforation of the eye. The record further indicates that the plaintiff's eyesight declined after the injury. Although he was able to pass the Department of Transportation examination necessary to qualify as a truck driver in 1977, he was unable to pass the exam after the injury.

■ The defendant argues that the material evidence rule does not apply to this case. The material evidence rule binds this

court to accept the trial court's findings of fact in worker's compensation cases where those findings are supported by any material evidence. *See Gregg v. J.H. Kellman Co. Inc.,* 642 S.W.2d 715 (Tenn.1982); *Liberty Mutual Insurance Co. v. Taylor,* 590 S.W.2d 920 (Tenn.1979).

> The defendant points out, however, that "[w]hile this Court is bound by the findings of the Chancellor on questions of fact, whenever there is any evidence to sustain the findings, we are not bound by the conclusions drawn by the Chancellor from undisputed facts, and may reach a different legal conclusion from that of the Chancellor on the same findings of fact."

*Wright v. Gunther Nash Mining Construction Co.,* 614 S.W.2d 796, 797 (Tenn. 1981), quoting *Insurance Company of America v. Hogsett,* 486 S.W.2d 730, 733 (Tenn.1972). It is alleged that the facts in this case are undisputed and that therefore this court is free to reach its own conclusions from the record.

This argument, however, overlooks an elaboration of the quoted language which was made by this court in *Davis v. Liberty Mutual Insurance Co.,* 214 Tenn. 287, 379 S.W.2d 777 (1964). In that case, it was explained:

> It is only when the evidentiary facts are undisputed and no conflicting inferences respecting the ultimate fact can be drawn therefrom that the question becomes one of law for this Court. If reasonable minds might differ as to the conclusions to be drawn from undisputed facts, the conclusions reached by the Trial Judge are binding on this Court.

379 S.W.2d at 780. *See also Greeson v. American Lava Corporation,* 216 Tenn. 461, 392 S.W.2d 931 (1965); *Sudduth v. Williams,* 517 S.W.2d 520 (Tenn.1974).

■ In the case at hand, the defendant offered no testimony. The record is composed entirely of the depositions of Dr. Wood and the testimony of the plaintiff and his wife. The question before the Court is whether plaintiff's disability resulted from the normal progress of a pre-existing condition or whether plaintiff's

pre-existing disease was aggravated by the May 1979 injury. Thus, the issue is essentially one of causation and questions of causation are generally questions of fact. *City of Lawrenceburg v. Nelson,* 219 Tenn. 177, 407 S.W.2d 674 (1966).

Dr. Wood stated that plaintiff's visual acuity in his right eye was 20/200 or worse when Dr. Wood first tested him in 1975. Dr. Wood also stated that plaintiff's visual acuity was measured as low as 6/200 in 1979 before the May 24th injury but that it subsequently improved to 20/200. At the same time, a comparison of plaintiff's performance on the Department of Transportation examinations, and Dr. Wood's plain statement that the plaintiff's eyesight is now worse than before the May 1979 injury, support the finding that plaintiff's eyesight has deteriorated. This proof, coupled with the statement of Dr. Wood that the May 1979 injury could have aggravated the diseased condition of plaintiff's right eye, further supports the allegation that the May 1979 injury did in fact aggravate the blinding effects of plaintiff's condition. Although the evidence presented by the deponent and by the witnesses is not self-contradicting and is not disputed, reasonable minds might differ as to the inferences to be drawn from the evidence. The trial court found that the injury did in fact aggravate a pre-existing condition and according to the rule stated in *Davis, supra,* we find that there is material evidence to support the finding and that this Court is bound thereby.

■ The recognition that differing inferences could reasonably be drawn from the evidence on this case negates plaintiff's argument for damages based on a frivolous appeal. In the cases citing the frivolous appeal statute, it is apparent that a factual or legal dispute will preclude an award of damages for frivolous appeals. *Liberty Mutual Ins. Co. v. Taylor,* 590 S.W.2d 920 (Tenn.1979); *Davis v. Gulf Ins. Group,* 546 S.W.2d 583 (Tenn.1977); *Combustion Engineering Inc. v. Kennedy,* 562 S.W.2d 202 (Tenn.1978); *Zwick v. Jones,* 589 S.W.2d 664 (Tenn.App.1979). In this case, there is

a legal dispute as to whether the material evidence rule applies. This question in turn is resolved by the recognition that there is a dispute over the inferences to be drawn from the evidentiary facts. Damages for a frivolous appeal should therefore be denied.

 Moreover, there can be no award of punitive damages against defendant. Although the statute does not expressly preclude it, this Court has held that punitive damages are not recoverable in worker's compensation cases. *Liberty Mutual Insurance Company v. Stevenson*, 212 Tenn. 178, 368 S.W.2d 760, 764 (1963).

The defendant contends that because plaintiff began looking for work in 1981, he was not entitled to temporary total disability benefits after that date. Temporary total disability "refers to the injured employee's condition while disabled to work by his injury and until he recovers as far as the nature of his injury permits." *Redmond v. McMinn County*, 209 Tenn. 463, 354 S.W.2d 435, 437 (1962). Stated another way, "[t]emporary total disability benefits ... are terminated either by the ability of the employee to return to work or [by] the attainment of maximum recovery from his injury." *Brown Shoe Company v. Pipes*, 581 S.W.2d 140, 141 (Tenn.1979); *Simpson v. Satterfield*, 564 S.W.2d 953 (Tenn.1978). Thus, when a plaintiff becomes *able* to work at any employment permitted by the nature of his injuries, temporary total disability ends at that time.

In this case, the plaintiff was employed after the first corneal transplant. He worked for approximately eight weeks in 1980. The last corneal transplant was performed in the summer of 1981, but the plaintiff did not work again until 1983 when he was employed by the Okolona Truck Leasing Company for approximately six months. In July of 1983 the conjunctival flap was done and plaintiff's injured eye was encased in a plastic covering. The plaintiff did seek work continuously but without success during 1980, 1981 and 1982. As the trial court held, the plaintiff is not entitled to temporary total disability payments during the time that he was employed after the May 1979 injury. *A.C. Lawrence Leather Company v. Loveday*, 224 Tenn. 317, 455 S.W.2d 141 (1970). The fact, however, that he was endeavoring to find employment and that he eventually was successful indicates an ability to work and that he was not entitled to temporary total disability payments during all of this period. The failure of the trial court to exclude from coverage the time plaintiff was able to work as well as the time that he did in fact work was error. We cannot, however, recalculate the number of weeks for which plaintiff is entitled to temporary total disability. The record does not indicate precisely when the plaintiff reached maximum recovery and began looking for work. The matter is therefore remanded to the trial court for determination of this issue.

The judgment of the trial court is in all other respects affirmed. Costs are taxed to the defendant.

COOPER, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.