James W. WHITESIDE,
Plaintiff–Appellee,

v.

MORRISON, INC., Defendant and Third
Party Plaintiff–Appellant,

and

Sue Ann Head, Director of the Division of
Workers' Compensation, Tennessee De-
partment of Labor, Third Party Defen-
dant–Appellee.

Supreme Court of Tennessee,
at Nashville.

Nov. 13, 1990.

Alan C. DeBusk, Susan E. Jackson,
Schulman, LeRoy & Bennett, P.C., Nash-
ville, for defendant-appellant.

Nathan Harsh, Harsh, Kelly & Smith,
Gallatin, for plaintiff-appellee.

Charles W. Burson, Atty. Gen. and Re-
porter, Dianne Stamey Dycus, Asst. Atty.
Gen., Nashville, for third party defendant-
appellee.

## OPINION

DROWOTA, Judge.

The sole issue in this workers' compensa-
tion appeal is whether the trial court erred
in dismissing an action filed pursuant to
T.C.A. § 50–6–208 by the employer, Morri-
son, Inc., Defendant and Third–Party Plain-
tiff, against the Second Injury Fund,
Third–Party Defendant, for a portion of
workers' compensation benefits awarded to
the employee, James W. Whiteside, Plain-
tiff–Appellee. For the reasons set forth
below, we reverse the decision of the Chan-
cellor.

Mr. Whiteside, age 26 at the time of trial,
was born with a vascular malformation in
his brain. Specifically, the blood vessels

within his brain are thinner than normal, which tends to cause the veins and arteries located in his head to rupture and bleed. When a rupture occurs, blood floods the brain and causes paralysis and lessening of the ability to control the muscles and nerves. This was particularly a problem affecting the left side of Mr. Whiteside's body. In an effort to deal with his physical problems and learn skills useful in the marketplace, Mr. Whiteside was admitted to a rehabilitation center. Indeed, the rehabilitation center was instrumental in Mr. Whiteside obtaining employment with Morrison.

In 1986, Mr. Whiteside completed a Morrison employment application wherein he indicated in the medical history section of the form that he had "limited range and weight ability of left arm/hand." He was initially hired as a part-time employee, but eventually engaged to work full-time due to being regarded as a highly competent and dependable worker.

In September 1987, approximately one year and four months after obtaining employment with Morrison's, Mr. Whiteside felt pain in his shoulder while shoveling ice from an ice machine in an effort to ice down a salad bar. He continued to work until the pain became so intense that he reported the incident to a manager. When he requested permission to seek medical attention, the manager told him to sit down and relax, but the pain spread to his chest, arm, and back. After approximately one hour of sitting, he left and, using one hand, drove himself to a hospital where it was discovered that he had suffered a hemorrhage which flooded the brain and base of the brain with blood. Since the injury, Mr. Whiteside has been unable to care for himself and lives at home with his mother who is dying with cancer. His condition substantially limits what he is capable of doing and requires supervision 24 hours a day. It should be noted that two neurologists testified that Mr. Whiteside is totally and permanently disabled and is expected to get worse over time. The incident has left him paralyzed on his left side with some weakness on the right side. According to one of the neurologists, any activity involving a strain, such as sexual intercourse or a difficult bowel movement, can increase the chances of another hemorrhage. The possibility of death increases substantially with each hemorrhage.

The trial court found that Mr. Whiteside had suffered a compensable injury arising out of and in the course and scope of his employment. The court also determined that Mr. Whiteside was permanently and totally disabled as a result of the September 1987 injury. It was stipulated prior to trial that the employer had knowledge of the limitation concerning the left side of Mr. Whiteside's body at the time he was hired. The complaint against the Second Injury Fund was dismissed, giving rise to this appeal.

The employer contends that the trial court erred by not shifting a portion of the responsibility for benefits under T.C.A. § 50–6–208(a) [1] to the Second Injury Fund.

---

1. (a) If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, he shall be entitled to compensation from his employer or the employer's insurance company only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which the employee may be entitled under this chapter from the employer or the employer's insurance company; provided, however, that in addition to such compensation for a subsequent injury, and after completion of the payments therefor, then such employee shall be paid the remainder of the compensation that would be due for the permanent total disability out of a special fund to be known as the "second injury fund" herein created. To receive benefits from the second injury fund, the injured employee must be the employee of an employer who has properly insured his workers' compensation liability or has qualified to operate under the Tennessee Workers' Compensation Law as a self-insurer, and the employer must establish that the employer had actual knowledge of the permanent and preexisting disability at the time that the employee was hired or at the time that the employee was retained in employment after the employer acquired such knowledge but in all cases prior to the subsequent injury. In determining the percentage of disability for which the second injury fund shall be liable, no previous physical impairment shall be considered unless such impairment was within the knowledge of the employer as prescribed above.

The claim is made by the employer that the trial court based its decision upon the Plaintiff not having had any previous workers' compensation claims to trigger the statute. The Second Injury Fund maintains that there is no indication in the record that the trial court based its determination that the Second Injury Fund had no liability solely because the Plaintiff had no prior workers' compensation awards. According to the Second Injury Fund, the complaint was properly dismissed because, while the employer had knowledge that Mr. Whiteside was handicapped with a previous disability, that knowledge was limited to the fact that Mr. Whiteside had limited range and weight ability of his left arm and left hand, as opposed to having knowledge specifically of the arteriovenous malformation. The trial court's finding of permanent and total disability is not challenged by the parties.

■ We note at the outset that review of findings of fact by the trial court is *de novo*, accompanied by a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e). "This standard differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases." *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn.1987). Under the material evidence rule, this Court was required to accept the findings of fact of trial courts if those findings were supported by any material evidence. *Anderson v. Dean Truck Line, Inc.*, 682 S.W.2d 900, 901–02 (Tenn.1984). However, we are no longer bound by the findings of the trial court in these cases and now determine where the preponderance of the evidence lies. *Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 456 (Tenn.1988).

■ After reviewing the record before us, we cannot completely agree with the employer's contention that the basis for the dismissal was the lack of prior workers' compensation claims, although, admittedly, that implication is present. Ruling from the bench, the Chancellor stated:

"The next issue is, does the Second Injury Fund have liability? And in this matter the court finds that James W. Whiteside had no previous workers' compensation claims. The Court has given due consideration to the rehabilitation program that he was in, and due consideration to his previous jobs, his previous employment.

The Court finds that the Second Injury Fund has no liability. The third-party complaint is dismissed."

Moreover, the written order gives no reason for dismissing the third-party complaint, although it does make reference to Mr. Whiteside not having any prior workers' compensation claims. It may be that the references to prior workers' compensation claims was meant to explain why subsection (b) of the statute would not apply, but this does nothing to explain why subsection (a) would or would not be triggered by the court's finding that the employee was permanently and totally disabled. This is the reason that the Second Injury Fund maintains that the court, by implica-

Nothing in this section shall be construed to limit the employer's liability as provided by law for aggravation of preexisting conditions or disabilities in cases where recovery against the second injury fund is not applicable.

(b)(1) In cases where the injured employee has received or will receive a workers' compensation award or awards for permanent disability to the body as a whole, and the combination of such awards equals or exceeds one hundred percent (100%) permanent disability to the body as a whole, the employee shall not be entitled to receive from the employer or its insurance carrier any compensation for permanent disability to the body as a whole that would be in excess of one hundred percent (100%) perma-nent disability to the body as a whole, after combining awards. Benefits which may be due the employee for permanent disability to the body as a whole in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards, shall be paid by the second injury fund. It is the intention of the legislature that once an employee receives an award or awards for permanent disability to the body as a whole, and such awards total one hundred percent (100%) permanent disability, any permanent disability compensation due for subsequent compensable injuries to the body as a whole shall be paid by the second injury fund, instead of by the employer.

tion, opined there were knowledge problems concerning the application of subsection (a). To be sure, the rationale for the court's holding is unclear. If the Court held in the manner suggested by the employer, it would be erroneous because subsection (a) clearly states that the previous permanent physical disability can be "from *any* cause or origin." Unlike subsection (b), there is nothing in subsection (a), explicit or implicit, to suggest a requirement that the employee have sustained a previous compensable injury. See *Murray Ohio Manufacturing Co. v. Yarber*, 223 Tenn. 404, 446 S.W.2d 256 (1969).

Turning to the contention of the Second Injury Fund regarding the scope of the employer's knowledge, we note that in order for the employer to take advantage of subsection (a), it must be shown "that the employer had actual knowledge of the permanent and preexisting disability at the time that the employee was hired...." T.C.A. § 50-6-208(a). Our *de novo* review persuades us that the knowledge requirement under subsection (a) was satisfied. Mr. Whiteside had indicated on his employment application that he had problems with the left arm and hand. It was because of these difficulties that he attended the rehabilitation center. The evidence in the record shows that Morrison hired Mr. Whiteside through the rehabilitation center and, accordingly, had knowledge that he was handicapped to begin with. There was also the stipulation that Morrison knew specifically the physical limitations of the employee's left side. Finally, there is medical evidence that the underlying condition, arteriovenous malformation, made him more susceptible to the type of injury that he sustained while at work in September, 1987, and was the cause of the weakness that was related in the employment application. Taken together, these factors would seem to satisfy the statutory requirement under subsection (a) that the employer have actual knowledge of the permanent and pre-existing disability. Accordingly, we reject the position advanced by the Second Injury Fund for the reason that subsection (a) does not require the employer to be fully aware of all underlying medical causes of disability, but merely requires that the employer be aware that such a disability exists.

In view of the foregoing, the judgment of the Chancellor is reversed and the case remanded with instructions that the court apportion the percentage of disability between the employer and the Second Injury Fund pursuant to subsection (a) and also calculate interest due pursuant to T.C.A. § 50-6-225(h) (Supp.1990). Costs of this appeal are taxed to the Second Injury Fund.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.