**FILED**
**Apr 21, 2020**
**10:33 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Gena N. Mollica | ) | Docket No. 2018-01-0702 |
| | ) | |
| v. | ) | State File No. 66743-2017 |
| | ) | |
| EHHI Holdings, Inc., d/b/a Advanced | ) | |
| Home Care Management, Inc., d/b/a | ) | |
| Encompass Home Health, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard March 24, 2020, at Knoxville |
| Compensation Claims | ) | |
| Audrey A. Headrick, Judge | ) | |

---

## Affirmed in Part, Modified in Part, Reversed in Part, and Remanded

In this interlocutory appeal, the employee alleged she suffered an aggravation of a pre-existing mental condition as a result of medication she was taking to treat a compensable work-related physical injury. The employer denied that a compensable aggravation occurred and refused to authorize a referral to a psychiatrist made by the employee's authorized physician. The employer also failed to authorize a referral to an orthopedic specialist made by the employee's treating orthopedist. Following an expedited hearing, the trial court determined the employee had come forward with sufficient evidence to show she would likely prevail at trial in establishing her entitlement to benefits. The court ordered the employer to authorize the psychiatrist referral, to authorize the orthopedist referral, to pay temporary disability benefits, and to reimburse the employee's out-of-pocket medical expenses. The employer has appealed. We affirm the trial court's determinations to order the employer to authorize causally-related treatment with the physicians to whom the employee was referred. We modify the trial court's order for temporary disability benefits, and we reverse the portion of the court's order compelling the employer to pay the employee's out-of-pocket medical expenses. Finally, we find the employee's argument that the appeal is frivolous to be without merit, and we remand the case.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge David F. Hensley joined.

G. Graham Thompson, Chattanooga, Tennessee, for the employer-appellant, EHHI Holdings, Inc.

Carmen Y. Ware, Chattanooga, Tennessee, for the employee-appellee, Gena N. Mollica

**Factual and Procedural Background**

On August 28, 2017, Gena Mollica ("Employee") injured her back while working as a home health aide for EHHI Holdings, Inc. ("Employer"). The injury was accepted as compensable, and Employer initiated benefits, including medical treatment. Employee underwent a lumbar discectomy with Dr. Barry Vaughn, Employee's authorized physician. Dr. Vaughn placed Employee at maximum medical improvement on July 24, 2018, and imposed permanent restrictions of no lifting over 20 pounds frequently, 40 pounds occasionally, and no repetitive bending or squatting. Upon release, Dr. Vaughn referred Employee to pain management for treatment of residual symptoms associated with her back injury. Employer provided a panel of pain management physicians from which Employee selected Dr. Steven Musick.

Employee first saw Dr. Musick on August 29, 2018. The record of that visit reflects that Dr. Musick continued the restrictions imposed by Dr. Vaughn and prescribed Gabapentin for Employee's ongoing pain and radicular symptoms. At a September 26, 2019 appointment, Employee reported experiencing increased pain, and Dr. Musick ordered an MRI of Employee's lumbar spine to consider additional treatment options due to her persistent radiculitis. Dr. Musick recommended Employee continue taking the Gabapentin to see if it improved her radicular complaints. Following the MRI, Employee returned to Dr. Musick on December 3, 2018, reporting that she had stopped taking Gabapentin because it was making her forgetful. According to Dr. Musick, MRI images revealed a "recurrent left paracentral disc extrusion" compressing the left L5 nerve root. Dr. Musick replaced Gabapentin with Lyrica and recommended a second opinion with an orthopedic surgeon to discuss additional surgical options.

Employee saw Dr. Venkatanarayanan Ganapathy on January 31, 2019, for a surgical evaluation. Dr. Ganapathy noted that the most recent MRI showed what appeared to be an L4-L5 left-sided lumbar laminectomy, adding that he was able to "appreciate scarring with no definitive recurrent disc [herniation] based on the postcontrast study." He also documented disc degeneration including the loss of disc height at L5-S1. Dr. Ganapathy recommended additional testing, an increase in the dosage of Lyrica, physical therapy, and dry needling.[1] He also reported that he did "not feel the patient [was] at maximum medical capacity." At a follow-up visit with Dr. Musick in March, the physician documented that Employee's increased Lyrica dosage had resulted in the development of "foggy sensorium." Employee continued to work for

---

[1] Dry needling, also known as intramuscular needling, is a therapy technique in which thin filaments are inserted into trigger-point musculature in an effort to relieve pain. Int'l J. Sports Phys. Ther., 2015 Jun; 10(3): 402-18, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4458928/ (last visited Apr. 17, 2020).

2

Employer from home part-time as a triage nurse, and her work restrictions remained in place.

In late April or early May 2019, Employee checked into Parkridge Valley ("Valley") for out-patient mental health treatment where she was seen by Dr. Gregory Oliver, a psychiatrist.[2]  Employee also continued treating with Dr. Musick.  The record of Employee's May 13 visit with Dr. Musick reflected that she had recently become severely depressed and had been getting worse for months.  Dr. Musick reported that Employee "does not believe Lyrica has caused this but is wondering if [Lyrica] is adding [to] it."  Employee advised Dr. Musick that she had begun treatment at Valley and reported that she continued to work as a triage nurse part-time from home.

Employee next saw Dr. Musick on June 7 and described continued depression that, according to Dr. Musick's report, "became an issue while she was on Lyrica."  Employee reported she had discontinued Lyrica and had begun an intensive outpatient program at Valley.  She requested Dr. Musick refer her to a psychiatrist through workers' compensation due to her worsening depression that she attributed to her Lyrica usage.  Dr. Musick referred Employee to Dr. Aslam Sandvi to determine "work relatedness" and "potential treatment for significant worsening depression that started when [Employee] was on Lyrica."  He also encouraged Employee to continue her outpatient treatment program under her personal health insurance.

In a July 31 report, Dr. Musick noted that his previous referral for a psychiatry evaluation had not been approved.  He took Employee off of work retroactively to May 10, 2019, due to her "depression flare/aggravation from May until present date and continuing secondary to depression as a result of Lyrica use."  Dr. Musick next saw Employee on September 11 and noted her "[s]ignificant decompensation with increased depression, likely associated with Lyrica use."  On October 22, Dr. Musick responded to a causation letter sent by Employee.  Asked whether the employment contributed more than 50% in causing a new mental injury, Dr. Musick responded, "[a]s stated previously in my note from 6/7/19 – I continue to recommend psychiatry to evaluate [and] recommend if Lyrica caused psychological deterioration [and] treatment if so under Workers['] Compensation."  (Underline in original.)  When asked if the employment contributed more than 50% in causing an aggravation of a pre-existing condition, Dr. Musick marked "yes," referred to his previous response, and commented, "[b]ut still need psychiatry to evaluate [and] state for certainty."  Employer declined to authorize the referral or provide a panel of psychiatrists, asserting that neither a new mental injury nor any aggravation of a pre-existing condition was causally related to Employee's work.

---

[2] Because the records of Employee's treatment at Valley are not included in the record, we cannot determine the exact date of her admission.  Employee testified that she believed her admission occurred at the end of April or beginning of May.  Employer alleged Employee did not report for her shift on May 5, 2019, and that it later learned she had sought mental health treatment during that time.

In October 2019, Dr. Ganapathy, who was still treating Employee for her ongoing orthopedic complaints, left his medical practice. Prior to leaving, he referred Employee to Dr. Adam Caputo for continued medical treatment for her back condition. Employer did not offer a new panel or authorize treatment with Dr. Caputo.

Following the filing of a petition for benefits, Employee requested an expedited hearing in which she sought an order requiring Employer to: (1) authorize the referral to the psychiatrist, Dr. Sandvi; (2) authorize the referral to the orthopedist, Dr. Caputo; (3) reimburse Employee for her out-of-pocket expenses for psychiatric medication and evaluations that she sought on her own; and (4) pay past and ongoing temporary disability benefits. In addition, Employee asked the court to assess a twenty-five percent penalty against Employer for non-payment of temporary disability benefits. Following the expedited hearing, the trial court concluded Employee had come forward with sufficient evidence to indicate she was likely to prevail at trial regarding the provision of a psychiatric evaluation with Dr. Sandvi, orthopedic treatment with Dr. Caputo, reimbursement of medical expenses, and payment of past and ongoing temporary disability benefits. The trial court stated it would address Employee's request for a twenty-five percent penalty at a later date. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2019). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2019).

## Analysis

Employer identified five issues on appeal, which we have combined and restated as follows: (1) whether the trial court erred in requiring Employer to authorize the referral to Dr. Sandvi; (2) whether the trial court erred in requiring Employer to authorize the

4

referral to Dr. Caputo; (3) whether the trial court erred in requiring Employer to reimburse Employee for past medical expenses related to her alleged mental condition; and (4) whether the trial court erred in ordering payment of past and ongoing temporary disability benefits. In addition, Employee presents two issues: (1) whether the trial court should have assessed a penalty against Employer for its failure to timely pay temporary disability benefits and (2) whether Employer's appeal is frivolous.

*Psychiatric Referral*

Employer disputes Employee's assertion that she suffered a new work-related mental injury or aggravation of a pre-existing mental condition. Employer does not dispute that Employee suffers from the symptoms she alleges, but it contends her condition is pre-existing and was caused by events in her personal life rather than the medication prescribed for her work-related injury. In contrast, Employee maintains that her underlying mental condition was aggravated by her use of Lyrica, resulting in a compensable aggravation of her pre-existing condition.

It is undisputed that Dr. Musick referred Employee to Dr. Sandvi for a psychiatric evaluation that he believes is necessary as a result of Employee's Lyrica use. Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii) contemplates that, when appropriate, a "treating physician selected in accordance with this subdivision (a)(3)(A) shall make referrals to a specialist physician, surgeon, or chiropractor and immediately notify the employer." When such a referral is made, "[t]he employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides the employee a panel of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups." Tenn. Code Ann. § 50-6-204(a)(3)(A)(ii). As a result, in the present case, the burden of proof was on Employer to show that Dr. Musick's referral was not medically appropriate as a result of the compensable physical injury. Moreover, any treatment recommended by a physician chosen from a panel or by referral is presumed to be medically necessary. Tenn. Code Ann. § 50-6-204(a)(3)(H).

While Employer does not dispute that Dr. Musick is the authorized physician or that he made a referral for a psychiatric evaluation that he believes may be work related, it does dispute whether Employee's current complaints of a mental injury are causally related to her employment. In support of its position, Employer relies on Employee's history of mental health treatment and the fact that, during the relevant time period, Employee had numerous traumatic events occur in her life. However, Employer has offered no opinion other than its own that the need for the psychiatric referral is unrelated to Employee's work. As we have previously stated, "parties and their lawyers cannot rely solely on their own medical interpretations of the evidence to successfully support their arguments." *Lurz v. International Paper Co.*, No. 2015-02-0462, 2018 TN Wrk. Comp. App. Bd. LEXIS 8, at *17 (Tenn. Workers' Comp. App. Bd. Feb. 14, 2018). Employer's interpretation of Employee's prior treatment records and its belief regarding

5

the cause of her current mental complaints, absent supporting expert medical proof, are not sufficient to overcome the trial court's determination of the appropriateness of Dr. Musick's referral to Dr. Sandvi for psychiatric evaluation and treatment. Accordingly, the evidence does not preponderate against the trial court's determination to order Employer to authorize the referral to Dr. Sandvi.

*Orthopedic Referral*

Employer also asserts the trial court erred in ordering Employer to authorize the referral by Dr. Ganapathy to Dr. Caputo for orthopedic treatment. Yet, Employer has provided no medical proof that contradicts Dr. Ganapathy's opinions or recommendations and has offered no rationale or legal argument on appeal to explain why it refused to authorize the referral. Instead, Employer presents a single statement concerning the referral, arguing that any causation opinion of Dr. Caputo "would not be entitled to a presumption of correctness under [Tennessee Code Annotated § 50-6-102(14)(E)]."

As discussed above, upon the referral from Dr. Ganapathy, Employer had three business days to provide Employee with a panel of providers or it would be deemed to have accepted the referral. Tenn. Code Ann. § 50-6-204(a)(3)(A)(ii). It is undisputed that Dr. Ganapathy was the authorized physician for Employee's compensable back injury and that Dr. Ganapathy left his practice in October 2019. In a medical note of October 8, 2019, Dr. Ganapathy referred Employee to Dr. Caputo for continuing medical treatment. At the expedited hearing, Employee testified that she had not seen an orthopedic specialist since October 2019 because Employer did not approve medical treatment with Dr. Caputo. The preponderance of the proof supports the trial court's determination to order Employer to authorize the referral to Dr. Caputo.

*Out-of-Pocket Medical Expenses*

Next, based on Employer's assertion that the aggravation of Employee's pre-existing mental condition is not work related, Employer asserts the trial court erred in requiring it to reimburse medical expenses incurred by Employee for her psychiatric evaluation and treatment. Employer additionally contends that Employee sought unauthorized treatment from Valley without advising it of her need for medical care. As a result, Employer insists the treatment was unauthorized.

Employee has provided certain receipts reflecting her payments for some medical care and medications. However, she has not provided any medical records associated with those receipts or any expert medical opinion indicating these expenses were reasonable, necessary, or causally related to her work injury. It is impossible to tell, other than with respect to the receipts for medication, what treatment was received. Dr. Musick, the only physician to offer a causation opinion regarding Employee's psychiatric

6

complaints, indicated that the expert opinion of a psychiatrist was needed to address causation. In addition, Dr. Musick encouraged Employee to continue with her outpatient program at Valley under her personal health insurance, which implies he was offering no opinion on the reasonableness and necessity of that treatment as it relates to her alleged work injury.

The trial court concluded that the medical expenses Employee incurred and paid for her alleged mental injury were reasonable, necessary, and causally related to the aggravation of her pre-existing mental condition. However, there is no proof in the record, other than Employee's testimony, that the medical expenses Employee presented for reimbursement were incurred as a result of her compensable work injury or that the expenses were reasonable and necessary. Thus, we reverse the portion of the trial court's order requiring Employer to reimburse Employee's out-of-pocket medical expenses.

*Temporary Disability*

To qualify for temporary total disability benefits, an employee must establish: (1) that he or she became disabled from working due to a compensable injury; (2) that there is a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015) (citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978)). An employee's entitlement to temporary total disability benefits ends when the employee either reaches maximum medical improvement or is able to return to work. *See Simpson*, 564 S.W.2d at 955 ("Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery.").

In an office note dated May 13, 2019, Dr. Musick noted that Employee continued to work as a triage nurse part-time from home. In his June 7, 2019 note, however, he stated that Employee had "not been working recently with her depression issues." A Change of Employee Information Form, electronically signed by Employee's supervisor, reflected Employee's last day worked was May 5, 2019, and her termination date was July 9, 2019. On July 16, 2019, Dr. Ahmed Ibrahim, the psychiatrist Employee saw on her own through Valley, provided correspondence indicating that Employee could "resume [a] full time schedule beginning on 8/2/19." Subsequently, on July 31, 2019, Dr. Musick took Employee off work retroactively "due to depression flare/aggravation from May 10 until present date and continuing secondary to depression as [a] result of Lyrica use." On September 11, Dr. Musick reported that Employee was looking for work but having difficulty finding work due to her current restrictions.

The trial court ordered Employer to pay temporary disability benefits from May 10, 2019, the date Dr. Musick indicated Employee's most recent period of temporary total disability began, through the date of the trial court's order and ongoing until

Employee is no longer eligible for benefits. However, in addition to Dr. Musick's September 11 medical note, Employee testified that she sought employment with three companies but was advised they were unable to accommodate her work restrictions or her need to attend medical appointments, both of which were related to her back injury. Moreover, counsel for Employee acknowledged during the expedited hearing that "Dr. Musick's notes do indicate that . . . [Employee] can resume work. She can return to work with her current restrictions." When an employee "becomes able to work at any employment permitted by the nature of his [or her] injuries, temporary total disability ends at that time." *Anderson v. Dean Truck Line*, 682 S.W.2d 900, 903 (Tenn. 1984).

Considering the record in its entirety, we conclude there is sufficient evidence to support the trial court's order regarding the payment of past temporary total disability benefits. However, the evidence is not presently sufficient to establish the appropriateness of on-going temporary disability benefits. We therefore affirm the trial court's order for payment of past temporary total disability benefits from May 10, 2019 through September 11, 2019, but we vacate the order for any on-going temporary total disability benefits after September 11, 2019.

### *Penalty/Frivolous Appeal*

Employee has requested that Employer be required to pay a twenty-five percent penalty for the late or non-payment of temporary disability benefits. The trial court stated that it would address that issue at a later time. Because the trial court did not rule on Employee's request, we decline to address it. *See Keyes v. Bridgestone Ams.*, No. 2016-06-2007, 2017 TN Wrk. Comp. App. Bd. LEXIS 33, at *7 (Tenn. Workers' Comp. App. Bd. May, 18, 2017) ("issues not presented to and decided by the trial court will not be considered by an appellate court"); *Cartwright v. Jackson Capital Partners, Ltd. P'ship*, 478 S.W.3d 596, 614 (Tenn. Ct. App. 2015) ("[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.").

Finally, we find no merit in Employee's request that this appeal be deemed frivolous.

### Conclusion

Based on the foregoing, we affirm the trial court's order requiring Employer to authorize the referral to Dr. Sandvi and the referral to Dr. Caputo. We reverse the order to the extent it requires Employer to reimburse Employee for out-of-pocket medical expenses, and we modify the order for payment of temporary disability benefits as stated above. The case is remanded, and costs are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Gena N. Mollica | ) | Docket No. 2018-01-0702 |
| | ) | |
| v. | ) | State File No. 66743-2017 |
| | ) | |
| EHHI Holdings, Inc., d/b/a Advanced | ) | |
| Home Care Management, Inc., d/b/a | ) | |
| Encompass Home Health, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard March 24, 2020, at Knoxville |
| Compensation Claims | ) | |
| Audrey A. Headrick, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 21st day of April, 2020.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Carmen Y. Ware | | | | X | cyware@thewarelawfirm.com |
| G. Graham Thompson | | | | X | gthompson@cskl.law |
| Audrey A. Headrick, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

_Olivia Yearwood_

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov