IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 9, 1999

## RACHEL TANNETTE RICE v. LEE ERIC RICE

**Appeal from the Circuit Court for Davidson County**
**No. 97D-3250     Muriel Robinson, Judge**

---

**No. M1998-00973-COA-R3-CV - Filed July 19, 2001**

---

This appeal involves the dissolution of a four-year marriage. Both parties requested the Circuit Court for Davidson County to grant them a divorce. On the day of trial, the parties stipulated that they should be declared divorced and agreed upon the division of their modest marital estate. Accordingly, the trial court heard proof regarding child custody and child support as well as the wife's request for rehabilitative spousal support. The trial court gave sole custody of the parties' child to the wife and directed the husband to pay $570 per month in child support, as well as all the child's healthcare expenses not covered by insurance. The trial court also ordered the husband to pay the wife $250 per month in rehabilitative support for twenty-four months. On this appeal, the husband takes issue with the trial court's decisions to grant the wife sole custody of the parties' child, to require him to pay the child's medical expenses not covered by insurance, and to pay the wife $250 per month in spousal support for twenty-four months. We have determined that the trial court's decisions are amply supported by the record, and accordingly, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

James Robin McKinney, Jr., Nashville, Tennessee, for the appellant, Lee Eric Rice.

Joe F. Gillespie, Jr., Joelton, Tennessee, for the appellee, Rachel Tannette Rice.

### OPINION

Lee Eric Rice and Rachel Tannette Rice, both thirty-one years old, met while attending Beacon Baptist Church. They were married on May 28, 1994. Mr. Rice was childless at the time, and Ms. Rice had a daughter who was living with her and a son who was living with his father. The parties had a son of their own who was born in October 1995. Ms. Rice, who had obtained a GED after completing the tenth grade, decided to stay at home to raise the children. Mr. Rice was employed at Deloitte & Touche as a groupware specialist.

The parties' relationship began to sour, and they separated in November 1997. Shortly thereafter, Ms. Rice filed for divorce in the Circuit Court for Davidson County, and Mr. Rice counterclaimed for divorce. Both parents sought custody of their son, and Ms. Rice sought rehabilitative spousal support. On the day of trial, the parties announced that they had agreed that they both had grounds for divorce and that they had agreed on the division of their marital estate and debts. Following a bench trial, the trial court declared the parties divorced, awarded sole custody of the parties' child to Ms. Rice, and ordered Mr. Rice to pay $570 per month in child support and $250 per month in spousal support for twenty-four months. The trial court also ordered Mr. Rice to pay for all his son's medical expenses that were not covered by insurance.

The trial court entered its final judgment on September 30, 1998. On October 15, 1998, Mr. Rice filed a notice of appeal challenging the trial court's decision to grant Ms. Rice sole custody of the parties' son. Although he does not object to the amount of child support awarded, he takes issue with the portion of the trial court's judgment requiring him to pay for all of his son's uninsured medical expenses. He also takes issue with the portion of the order requiring him to pay Ms. Rice $250 per month for twenty-four months.

## I.
### CUSTODY OF THE PARTIES' SON

Mr. Rice first takes issue with the trial court's decision to grant Ms. Rice sole custody of their son. He asserts that he is better able to support the child financially and to provide the child with a stable home environment. After reviewing the record, we find no basis to second-guess the trial court's custody decision

### A.

Custody and visitation arrangements are among the most important decisions confronting a trial court in a divorce case. Courts must strive to devise custody arrangements that promote the development of the children's relationship with both parents and interfere as little as possible with post-divorce family decision-making. *Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn. 1996); *Taylor v. Taylor*, 849 S.W.2d 319, 331-32 (Tenn. 1993). The needs of the children are paramount, while the desires of the parents are secondary. *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986). Custody should never be used to punish or reward the parents, *Turner v. Turner*, 919 S.W.2d 340, 346 (Tenn. Ct. App. 1995); *Long v. Long*, 488 S.W.2d 729, 733 (Tenn. Ct. App. 1972), but rather should promote children's best interests by placing them in an environment that will best serve their physical and emotional needs. *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983).

There are no hard and fast rules for determining which custody and visitation arrangement will best serve a child's needs. *Taylor v. Taylor*, 849 S.W.2d at 327; *Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983). The inquiry is factually driven and requires the courts to carefully weigh numerous considerations. *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990); *Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988). The Tennessee General Assembly and the courts

have identified the factors that trial courts should consider. Tenn. Code Ann. § 36-6-106(a) (Supp. 2000); *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983).

Courts customarily devise initial custody and visitation arrangements by engaging in a "comparative fitness" analysis which requires them to determine which of the available custodians is comparatively more fit than the other. *In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995); *Bah v. Bah*, 668 S.W.2d at 666. This "comparative fitness" analysis does not measure the parents against the standard of perfection because the courts are pragmatic enough to understand that perfection in marriage and parenting is as evanescent as it is in life's other pursuits. *Rice v. Rice*, 983 S.W.2d 680, 682-83 (Tenn. Ct. App. 1998); *Gaskill v. Gaskill*, 936 S.W.3d 626, 630 (Tenn. Ct. App. 1996). Rather, the analysis requires the courts to determine which of the parents, in light of their present circumstances, is comparatively more fit to assume and discharge the responsibilities of being a custodial parent.

Custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). Accordingly, appellate courts are reluctant to second-guess a trial court's decisions. Trial courts must be able to exercise broad discretion in these matters, but they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law. *D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995). Thus, we review these decisions de novo on the record with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Nichols v. Nichols*, 792 S.W.2d at 716; *Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992).

## B.

Mr. Rice believes that he is the more suitable person to have custody of the parties' five-year-old son. He insists that he can provide the boy more stability and a better home environment and that he will be more attentive to the child's needs. To support these claims, he points to Ms. Rice's job history following the separation, her lack of housekeeping and cooking skills, and her failure to keep their son's immunizations current. For her part, Ms. Rice asserts that the trial court had good reasons to grant her sole custody. Specifically, she points to the fact that she has been the child's primary care-giver, Mr. Rice's violent temper, and the dangerousness of the area where Mr. Rice lives.

The trial court determined that both parties are fit to have custody of their son but that, under all the circumstances, Ms. Rice is comparatively more fit. Like many other stay-at-home mothers suddenly thrust into the labor market, Ms. Rice found it difficult to establish a stabile environment following the separation. However, by the time of trial, she had obtained steady, full-time employment at Labor Ready, Inc. and was earning a net income of $1,306.50 per month. She has also rented a two-bedroom duplex in Joelton which will be adequate for her and the children until she can earn enough to afford to purchase a home. She also described her daily schedule to demonstrate that she is able to work forty hours per week and to adequately care for her children.

We concur with the trial court's conclusion that both Ms. Rice and Mr. Rice are fit to have custody of their son. Both parents are concerned for his welfare and are capable of attending to his needs. There is ample evidence demonstrating that Ms. Rice has and continues to provide suitable care for her son while balancing the demands of motherhood and the challenges of re-entry into the workforce. The trial court had the opportunity to view these parties as they testified and to judge their credibility. This record provides us with no basis to second-guess the trial court's decision to award sole custody to Ms. Rice.

## II.
### MEDICAL EXPENSES BEYOND THOSE COVERED BY THE CHILD'S HEALTH INSURANCE

Mr. Rice also insists that the trial court erred by requiring him to be responsible for all of his son's medical expenses that are not covered by health insurance. He argues that placing this burden solely on him circumvents the child support guidelines and is an abuse of discretion.[1] We disagree. Tenn. Code Ann. § 36-5-101(f)(1) (Supp. 2000)[2] specifically empowers trial courts to order a parent to be responsible for all of a child's uncovered medical expenses. In light of the $25,700 difference between the parties' net annual take home pay, the trial court had ample reason to require Mr. Rice to be responsible for his son's uncovered medical expenses.

## III.
### MS. RICE'S REHABILITATIVE ALIMONY

As his final issue, Mr. Rice challenges the trial court's decision to award Ms. Rice $250 per month in rehabilitative spousal support for twenty-four months. He argues that Ms. Rice's financial circumstances have improved markedly since the parties' separation and that Ms. Rice never demonstrated any real desire to rehabilitate herself. For her part, Ms. Rice asserts that she needs the short-term rehabilitative alimony to help her get back on her feet following the separation and divorce.

### A.

Ms. Rice had completed the tenth grade and had earned her GED when she met Mr. Rice. She had also held several jobs, but after the birth of their son, she and Mr. Rice decided that she should remain at home. The family's financial circumstances eventually forced her to return to work first at a nursing home and then at a marketing research firm. She eventually found a more lucrative, full-time position with Labor Ready, Inc. where she works forty hours per week and takes home

---

[1] Decisions under Tenn. Code Ann. § 36-5-101(f)(1) regarding a child's uncovered medical or dental expenses are discretionary. *Ray v. Ray*, No. 02A01-9404-CV-00078, 1995 WL 353433, at *6 (Tenn. Ct. App. June 13, 1995) (No Tenn. R. App. P. 11 application filed).

[2] Tenn. Code Ann. § 36-5-101(f)(1) provides: "The court may direct the acquisition or maintenance of health insurance covering each child of the marriage and may order either party to pay all, or each party to pay a pro rata share of, the health care costs not paid by insurance proceeds."

$1,306.05 in net monthly earnings. Her current monthly expenses are approximately $1,980. Ms. Rice also stated that she had taken several electronics courses and that she anticipated that she would be financially self-sufficient within two to three years.

**B.**

Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 2000) reflects a preference for temporary, rehabilitative spousal support, as opposed to long-term support. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000); *Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999). The purpose of rehabilitative support is to enable the disadvantaged spouse to acquire additional job skills, education, or training that will enhance or enable him or her to be more self-sufficient and to function independently and with economic security in society. *Burlew v. Burlew*, 40 S.W.3d at 470-71; *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991); *Smith v. Smith*, 912 S.W.2d 155, 160 (Tenn. Ct. App. 1995).

There are no hard and fast rules for spousal support decisions. *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998); *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Goodman v. Goodman*, 8 S.W.3d at 293; *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). These decisions are factually driven and require careful balancing of the various factors contained in Tenn. Code Ann. § 36-5-101(d)(1). *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999); *Herrera v. Herrera*, 944 S.W.2d 379, 387-88 (Tenn. Ct. App. 1996). Accordingly, appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *Earls v. Earls*, 42 S.W.3d 877, 888 (Tenn. Ct. App. 2000); *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998).

**C.**

The evidence demonstrates clearly that Ms. Rice is economically disadvantaged in comparison to Mr. Rice and that she currently lacks the means or skill to be able to support herself and the parties' child in a manner approaching their standard of living during the marriage. She had few marketable job skills and, when she entered the job market again following the parties' separation, she had little marketable job experience. The combined amount of the child support and the temporary support awarded by the trial court will essentially enable Ms. Rice to meet her monthly expenses for twenty-four months. When the rehabilitative support runs out, the trial court anticipated that Ms. Rice would then be earning enough salary, when combined with her child support, to meet her needs and the needs of the parties' child.

This case illustrates that rehabilitation does not necessarily envision that a spouse will return to school or enroll in some sort of training in order to enhance his or her job skills. In circumstances such as this one where a spouse has not been in the workforce for some time, simply returning to work and establishing a work history that may lead to promotion or advancement may also be

rehabilitative. Based on our review of this record, we cannot say that the trial court erred by awarding Ms. Rice $250 per month in rehabilitative spousal support for twenty-four months. Accordingly, we affirm the award for rehabilitative spousal support.

## IV.
### ATTORNEY'S FEES FOR A FRIVOLOUS APPEAL

Ms. Rice asks this court to award her attorney's fees for this appeal arguing that this appeal was frivolous given that the issues raised by Mr. Rice are factual ones with material evidence supporting the trial judge's findings. While Ms. Rice is correct that the issues raised by Mr. Rice are fact-oriented, we have determined that she is not entitled to damages for a frivolous appeal.

Successful parties should not have to bear the cost and vexation of baseless appeals. *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999); *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989). Accordingly, Tenn. Code Ann. § 27-1-122 (1980) empowers appellate courts to award damages against parties whose appeals are frivolous. An appeal is frivolous if it has no reasonable chance of success or is devoid of merit. *Bursack v. Wilson*, 982 S.W.2d 341, 345 (Tenn. Ct. App. 1998); *Industrial Dev. Bd. v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). The damages that may be awarded for a frivolous appeal include the costs and expenses incurred by the appellee as a result of the appeal. *Wells v. Sentry Ins. Co.*, 834 S.W.2d 935, 938 (Tenn. 1992).

While Mr. Rice did not succeed with his appeal, we do not perceive that he appealed solely to cause delay or for some other improper purpose. Genuine disagreements regarding the facts or the conclusions to be drawn from the facts provide a sufficient basis for an appeal and provide an appropriate basis for declining to award frivolous appeal damages. *Anderson v. Dean Truck Line, Inc.*, 682 S.W.2d 900, 902 (Tenn. 1984); *Liberty Mut. Ins. Co. v. Taylor*, 590 S.W.2d 920, 922-23 (Tenn. 1979). Accordingly, we decline to award Ms. Rice her attorney's fees on appeal.

## V.

We affirm the judgment of the trial court and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Lee Eric Rice and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE